# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **RUTH ARGUETA, mother and next friend of the minor child JOSE HENRIQUEZ,** | ) ) ) ) | |
| **Plaintiff,** | ) ) | |
| **v.** | ) ) | **Civil Action No. 04-00260 (RCL)** |
| **GOVERNMENT OF DISTRICT OF COLUMBIA,** | ) ) ) ) | |
| **Defendant.** | ) | |

## <u>MEMORANDUM OPINION</u>

This matter comes before the court on plaintiff's motion for summary judgment ("Pl. Mot.") .  Defendant filed a motion for summary judgment and opposition to plaintiff's motion for summary judgment ("Def. Mot.").  Plaintiff then filed an opposition to defendant's motion for summary judgment and a reply to defendant's opposition to plaintiff's motion for summary judgment ("Pl. Opp'n").  Upon consideration of the filings and the applicable law, the Court will grant Plaintiff's motion for summary judgment and deny defendant's motion for summary judgment.

## I.     Background

Jose is a seven-year-old District of Columbia Public Schools ("DCPS") student who has multiple learning disabilities.  (Compl. ¶¶ 4 and 5).  Jose's education twice before has been the subject of Individuals with Disability Act ("IDEA") hearings.  (Administrative Hr'g Tr., 8). School authorities developed Jose's Individualized Education Program ("IEP") in 2001, and placed him in a full-time special education program.  (<u>Id.</u>).  In this program, Jose received occupational therapy, physical therapy, speech and language therapy, counseling, and specialized

instruction.  (Id. at 8-9).

Jose's evaluation team met again on May 13, 2003, to assess the appropriateness of his IEP.  (Id. at 9).  They determined Jose was making progress but that he needed new evaluations; however, these new evaluations never were performed.  (Id.).  On November 14, 2003, pursuant to IDEA, Jose's mother requested an administrative due process hearing regarding Jose's educational needs.  (Compl. Attach. 1, Hearing Officer's Decision, at 3).  The hearing was convened on December 17, 2003.  (Id. at 1).  Hearing Officer Nadine Evans presided, (Id.), and issued an order on January 20, 2004.  (Id. at 9).

Plaintiff contends Evans erred on four points.  Plaintiff alleges the errors consist of (1) ceding authority to determine if Jose is entitled to compensatory education to a Multi-Disciplinary Team ("MDT"), in light of her finding that DCPS had failed to carry its burden of proving it had provided Jose with a free and appropriate public education (Compl ¶ 20); (2) limiting compensatory educational services from the period of September, 2003, to the date of the MDT meeting (Compl ¶ 22); (3) failing to consider the allegation that defendant failed to provide specialized education as per Jose's IEP for three school years (Compl ¶ 24), and (4) failing to incorporate in her Order the defendant's agreement to fund an independent assistive technology evaluation.  (Compl ¶ 26).  Plaintiff further claims defendant violated Jose's due process rights by failing to convene a hearing and failing to ensure a final order was issued within the statutorily required time period.  (Compl ¶¶ 28 and 30).

Plaintiff seeks summary judgment that awards plaintiff compensatory education services, or, in the alternative, summary judgment that remands the case to the administrative hearing officer for purposes of holding a hearing pursuant to IDEA to determine the amount, form, and

delivery of compensatory services.  (Pl. Mot. at 1).  Defendant opposes plaintiff's motion, and

seeks summary judgment on the grounds that Hearing Officer Evans' order was reasonable.

(Def. Mot. at 7).

## II.    Applicable Law

### A.    Summary Judgment

Summary judgment is appropriate under Federal Rule of Civil Procedure 56(c) when no

genuine issue of material fact exists.  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  A

genuine issue of material fact exists if the evidence is such that a reasonable jury could return a

verdict for the non-moving party.  Anderson v. Liberty Lobby Inc., 477 U.S. 242, 248 (1986).  As

with Rule 12(b)(6) motions for dismissal, facts and inferences drawn from those facts must be

viewed in the light most favorable to the non-moving party.  Adickes v. S.H. Kress & Co., 398

U.S. 144, 157 (1970).  Summary judgment may still be granted, however, if evidence favoring

the non-moving party is merely colorable, or is not significantly probative.  Anderson, 477 U.S.

at 249-50 (citations omitted).  Once the moving party files a proper summary judgment motion,

the burden shifts to the non-moving party to produce "specific facts showing that there is a

genuine issue for trial."  Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 250.  For a non-moving

party to establish a genuine issue for trial exists, it must do more than simply show there is some

metaphysical doubt as to the material facts.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,

475 U.S. 574, 586 (1986).

Local Rule of Civil Procedure 56.1 sets forth specific procedures for parties to follow

when moving for summary judgment.  "Each motion for summary judgment shall be

accompanied by a statement of material facts as to which the moving party contends there is no

3

genuine issue . . ." (emphasis added) LCvR 56.1.  A party's opposition to summary judgment

"shall be accompanied by a separate concise statement of genuine issues setting forth all material

facts as to which it is contended there exists a genuine issue necessary to be litigated, which shall

include references to the parts of the record relied on to support the statement."  (emphasis

added) Id.; see Burke v. Gould, 286 F.3d 513, 517 (D.C. Cir. 2002).  This procedure "isolates the

facts that the parties assert are material, distinguishes disputed from undisputed facts, and

identifies the pertinent parts of the record."  Burke, 286 F.3d at 517 (citing Gardels v. Cent.

Intelligence Agency, 637 F.2d 770, 773 (D.C. Cir. 1980)).  Moreover, the rule provides that when

deciding a motion for summary judgment, "the court may assume that facts identified by the

moving party in its statement of material facts are admitted, unless such a fact is controverted in

the statement of genuine issues filed in opposition to the motion." (emphasis added) LCvR 56.1.

**B.     IDEA**

IDEA "confers upon disabled students an enforceable substantive right to public

education . . . and conditions federal financial assistance upon a State's compliance with the

substantive and procedural goals of the Act."  Honig v. John Doe, 484 U.S. 305, 310 (1988).[1]

The goal of IDEA is to ensure that all children are afforded "a free and appropriate public

education . . . designed to meet their unique needs and prepare them for employment and

independent living."  20 U.S.C. § 1400(d)(1)(A).

In order to receive funds under IDEA, the Act requires school districts to adopt

---

[1]Honig interprets provisions of the Education of the Handicapped Act, 20 U.S.C. § 1400 et. seq., which was reenacted in 1990 as IDEA.  Law interpreting the Education of the Handicapped Act is applicable to IDEA.  See Bd. Of Trustees of Univ. Of Ala. v. Garrett, 531 U.S. 356, 391 (2001).

procedures that ensure appropriate educational placement of disabled students.  See 20 U.S.C. § 1413.  These plans, known as "individualized education programs," or "IEPs," must include a "statement of the child's present levels of educational performance, . . . a statement of measurable annual goals, [and] a statement of the special education and related service . . . to be provided to the child. . . ."  20 U.S.C. § 1414(d)(1)(A).  In addition, the Act requires that all states receiving funds under it shall provide a free and appropriate public education for all children between the ages of 3 and 21; establish a goal of providing full educational opportunity to children with disabilities, including a timetable for accomplishing goals; regardless of the severity of the disability, to identify, locate, evaluate, develop, provide, and implement practical remedial measures to children who need special education and related services; provide an IEP; provide remedial education in the least restrictive environment practicable; and provide additional requirements not in violation of IDEA.  20 U.S.C. § 1412(a)(1)-(5).

IDEA grants parents broad procedural rights to enforce the provisions of the Act.  See Honig, 484 U.S. at 310.  The Act guarantees parents an opportunity to participate in the "identification, evaluation, and educational placement of the child," 20 U.S.C. § 1415(h)(1), and parents who object are entitled to an "impartial due process hearing," §§ 1415(b)(6), (f)(1) at which they have a "right to be accompanied and advised by counsel."  § 1415(h)(1).  During the due process hearing, "[defendant] shall bear the burden of proof, based solely upon the evidence and testimony presented at the hearing, that the action or proposed placement is adequate to meet the educational needs of the student."  5 D.C. Mun. Regs. § 3022.16.  Any party aggrieved by the hearing officer's determination may seek judicial review of the determination in federal district court.  20 U.S.C. § 1415(i)(2)(A).  The hearing officer who presides is charged with rendering a

final decision on the matter.  20 U.S.C. § 1415(i)(1)(A).

### C.   Standard of Review

In reviewing administrative decisions under the IDEA, courts will review the records of the administrative proceedings, hear additional evidence at the request of a party, and make a decision based on the preponderance of the evidence.  20 U.S.C. § 1415(i)(2)(B).  In suits brought under § 1415(e)(2), the court must apply the two-prong test set forth in Bd. of Educ. Hendrick Hudson Central Sch. Dist. v. Rowley, 458 U.S. 176, 206 (1982).  First, the court must determine whether the state has complied with the procedural requirements of IDEA.  Id. Second, the court must determine whether the IEP developed by the school district is "reasonably calculated" to confer educational benefits on the child.  Id.

The court has broad discretion to grant appropriate relief under IDEA, see Sch. Comm. of Burlington v. Mass. Dept. Of Educ., 471 U.S. 359, 369 (1985), and its standard of review under IDEA is less deferential than that used in the traditional substantial evidence test in ordinary administrative review cases.  See e.g. Kerkham v. McKenzie, 862 F.2d 884, 887 (D.C. Cir. 1988); Kroot v. D.C., 800 F.Supp. 976, 981 (D.D.C. 1992).  However, the district court should not "substitute its own notions of sound educational policy for those of the school authorities." Rowley, 458 U.S. at 206.  The court must give "due weight" to the administrative proceedings, but its decision ultimately should be an "independent [one] based on a preponderance of evidence."  Id. at 206-07.

The court should review the hearing officer's decision along with additional evidence and "shall grant such relief as [it] determines is appropriate."  § 1415(i)(B)(2).  "Appropriate" has been interpreted broadly.  Burlington Sch. Comm. V. Mass. Dep't of Educ., 471 U.S. 359, 369

(1985).  In <u>Burlington</u>, the Supreme Court held that "appropriate" relief would include reimbursing parents who paid for their child's private school education in lieu of an appropriate state-provided educational setting.  <u>Id.</u>  Likewise, in cases in which parents could not afford to pay for private schooling, this court has held that parents still have a "viable remedy" via compensatory education.  <u>Harris v. D.C.</u>, No. Civ.A. 91-1660, 1992 WL 205103, at *3 (D.D.C. 1992); <u>Hammond v. D.C.</u>, No. Civ.A. 99-1723, 2001 WL 34360429, at *6 (D.D.C. March 1, 2001); <u>see</u> <u>Hall v. Knott Co. Bd. Of Educ.</u>, 941 F.2d 402 (6th Cir. 1991); <u>Lester H. V. Gilhool</u>, 916 F.2d 865 (3rd Cir. 1990).  The right to compensatory education accrues when the school district knew or should have known that a disabled child was not receiving a free and appropriate education.  <u>See Ridgewood Bd. Of Educ. v. N.E. ex rel M.E.</u>, 172 F.3d 238, 250 (3rd Cir. 1999).

**III.    Analysis**

First, defendant failed to comply with Local Rule of Civil Procedure 56.1.  In its own motion for summary judgment, defendant did not submit a set of material facts as to which there is no genuine issue.  <u>See</u> Def. Mot.  Likewise, in its opposition to plaintiff's motion for summary judgment, defendant failed to set forth a "separate concise statement" of genuine issues.  <u>See id.</u>  As the court stated in <u>Canady v. Erbe Elektromedizin GMBH</u>, 307 F.Supp.2d 2, 10 (D.D.C. 2004), this rule "helps the district court maintain docket control and decide motions for summary judgment efficiently."  By failing to comply with the clear instructions under LCvR 56.1 to supply a separate statement of genuine issues making clear to the court the disputed issues, the defendant has hindered the efficiency of this court.  As a result of this failure, defendant is deemed to have admitted those facts identified by the plaintiff in its motion for summary judgment.  LCvR 56.1.

7

Second, under the regulations implementing IDEA in the District of Columbia, defendant

carries the burden of proving, by a preponderance of the evidence, that its actions have

adequately met the educational needs of the student.  5-3022.16 C.D.C.R.; see also 20 U.S.C.

§§1401(a)(1) and 1415 (b)(2).  Hearing Officer Evans found that defendant had not carried its

burden of proving it provided the special services required under Jose's IEP, nor had it provided

necessary re-evaluations for Jose.  Compl. Attach. 1, Hearing Officer's Decision, at 5-6.  Jose

was scheduled to have speech therapy, occupational therapy, physical therapy and counseling for

various amounts of time dating back to April, 2001.  Pl. Mot. at 5.  According to the Hearing

Officer, who is charged with rendering a final decision in these matters, 20 U.S.C. §

1415(i)(1)(A), the defendant did not carry its burden of proving that it provided these services.

Compl. Attach. 1, Hearing Officer's Decision, at 6.  Indeed, the defendant does not proffer that it

provided Jose the services required under his IEP after 2001.  In fact, the defendant seems to

ignore plaintiff's contention, Pl. Stmt. Mat. Facts, at 5, and the Hearing Officer's determination,

Compl. Attach. 1, Hearing Officer's Decision, at 6, that he was denied the educational services

required under his IEP for the three-year period from 2001 through 2004.  As a result, defendant

has not met its burden of proving that plaintiff's IEP was carried out.  Accordingly, plaintiff is

entitled to three years of compensatory education.

In addition, plaintiff asserts that defendant recommended that Jose be re-evaluated in

May, 2003, due to "concerns about [his] behavior and academic progress."[2]  Plaintiff's Statement

of Material Facts ("Pl. Stmt. Mat. Facts"), ¶ 3.  The Hearing Officer found that Charles Young,

Jose's first school, did not perform the re-evaluations.  Hearing Officer's Decision, at 4, ¶ 10.

---

[2]  The court assumes this fact to be true under LCvR 56.1.

Further, the Hearing Officer found that Miner Elementary School, where Jose transferred in October, 2003, failed to carry out the requested re-evaluations. Id. at 5, ¶ 12. Accordingly, the defendant violated the IDEA requirements for Jose's education and must provide compensation for the lost educational opportunity.

Under Rowley, the defendant passes the first prong of the two-tier test, which requires the defendant to show it has complied with the procedural requirements of IDEA, but it fails the second prong. As stated supra, defendant in 2001 did establish an IEP for Jose. The school system in this regard complied with the procedural requirements of IDEA. However, the school system failed to carry out the IEP it implemented in 2001 by not providing special educational services to Jose. As a result, the defendant's IEP was not "reasonably calculated" to confer educational benefits on Jose. At a minimum, IDEA requires that the school system provide the student with the educational setting called for under his IEP. See Honig, 484 U.S. at 311 (describing the IEP as the "primary vehicle" and the "centerpiece of the statute's delivery system"). The defendant's only worthwhile contribution in this case was that it created Jose's IEP in the first place. However, its performance after the set-up date in 2001 was inadequate and fails Rowley. The Act requires that a child who needs additional education in a school system be given the attention he needs throughout the duration of his IEP, not only in its evaluative and planning stages.

**IV.**    **Conclusion**

Because no issue as to the material facts exists, the Court finds plaintiff's motion for summary judgment shall be GRANTED and defendant's motion for summary judgment shall be DENIED.  Under its broad authority to fashion equitable relief, <u>Burlington</u>, 471 U.S. at 369, this Court further finds Jose is entitled to compensatory education services for the failure of defendant to provide the related services and specialized instruction contained in plaintiff's IEPs for school years 2001-2002, 2002-2003, and 2003-2004, and defendant shall be ordered to provide such services.  Moreover, the plaintiff may submit an application for attorneys fees and costs in accordance with Local Rule of Civil Procedure 54.2.

A separate order shall issue this date.


Signed by Royce C. Lamberth, United States District Judge, January 27, 2005.